## FARMERS' NAT. BANK OF COOPER et al. v. ALLARD. (No. 2915.)

(Court of Civil Appeals of Texas. Texarkana. April 24, 1924.)

1. Money paid ⬅1 — Facts held to authorize recovery from bank by third party whose funds were appropriated by bank's creditor.

Where a broker, in compliance with an order from a bank used as depository by the broker's correspondent, sent money due various customers to another bank for the first bank's account, and it was applied by the second bank to indebtedness of first bank, and first bank subsequently became insolvent, held, that customer could recover against the insolvent bank on its implied promise to pay.

2. Money paid ⬅1 — Payment of money to third party for one not consenting created no liability.

Where bank advanced money to a broker for latter's customer, who did not know it nor consent to it, as the payment was either without authority or voluntary, and elements of contract express or implied were missing, it could not recover the amount from the customer.

3. Money paid ⬅8—Plaintiff must either allege express contract or specially plead facts and circumstances sustaining implication.

To warrant recovery for money paid and expended at defendant's special instance and request, plaintiff must either allege express contract or specially allege facts and circumstances from which contract legally sufficient to sustain recovery will be implied.

4. Contracts ⬅346(12, 16) — Plaintiff cannot recover on implied contract in suit on express one; plaintiff cannot show express contract in suit on implied one.

Plaintiff cannot recover on an implied contract in a suit on an express one, and he cannot show an express one if suing on an implied one.

5. Money paid ⬅1—One receiving benefits in ignorance of another's advancement does not impliedly ratify or estop self.

Where one receives benefits, ignorant of the fact of another's advancement of money on his behalf, not being under legal compulsion to pay it, ratification cannot be imputed, nor can estoppel be predicated against him.

6. Money paid ⬅9—Facts held to show that defendant never ratified payment to third party.

In cross-action for money paid to a third party at defendant's special instance and request, facts held to show that defendant never received or appropriated the money or any part of it, and did not ratify or consent to the advancement.

Appeal from District Court, Delta County; Silas Hare, Jr., Special Judge.

Suit by J. B. Allard against the Farmers' National Bank of Cooper and others. Judgment for plaintiff, and defendants appeal. Affirmed.

The appellee brought the suit against the Farmers' National Bank of Cooper, R. M. Love, its receiver, and the Security State Bank of Cooper, claiming that they were indebted to him in the sum of $1,211.48, payment of which was refused. The Farmers' National Bank and the receiver answered by general denial, and by way of cross-action sought a judgment against the plaintiff for $300, evidenced by an alleged note, and $2,000 alleged to have been paid to Fenner & Beane at the special instance and request of the plaintiff. The plaintiff replied to the cross-action by general denial, and specially denied the execution of the note for $300, and the $2,000 remittance or claim represent-

ed by the check therefor. The Security State Bank denied any indebtedness or liability for indebtedness.

In accordance with the special findings of the jury, and on the evidence the court entered judgment in favor of the plaintiff for the sum sued for, less the $300 claimed by the Farmers' National Bank and the receiver; and denying the Farmers' National Bank and the receiver recovery of the $2,000 set up in the cross-action, and in favor of the Security State Bank.

L. G. Moore & Co., were interior cotton brokers, with offices at Greenville and Cooper. Fenner & Beane were cotton brokers and members of the Cotton Exchange at New Orleans. Moore & Co. solicited business and then placed the orders with Fenner & Beane, who carried out the orders on the Cotton Exchange at New Orleans. Fenner & Beane had no direct dealings with the local customer of Moore & Co. The local customer would place his order with Moore & Co. and would pay them the required cash margin, and the order and the cash margin would be sent by Moore & Co. to Fenner & Beane at New Orleans. The Farmers' National Bank at Cooper was used by Moore & Co., with consent of Fenner & Beane, as "a depository for funds" for margins paid in, and for remittances made by Fenner & Beane, as a method of quick business transaction "and the opportunity afforded of making quick payments to L. G. Moore & Co." While Fenner & Beane did business only with Moore & Co., and held Moore & Co. responsible in all things, yet Fenner & Beane kept the orders and the accounts of each customer through Moore & Co. separate. For instance, the order and account of appellee was kept by Fenner & Beane under the following head: "L. G. Moore & Co., account J. B. Allard." It was understood between all parties to the orders that the profits, if any, in the course of dealings belonged to the individual customers, and not to L. G. Moore & Co.

It appears that the appellee gave L. G. Moore & Co. orders for cotton contracts, which were sent by them to Fenner & Beane at New Orleans, who executed them. Cotton contracts were given by appellee in 1919, from May to November, and in May, 1920. It appears conclusively that on May 5, 1920, the appellee gave L. G. Moore & Co. an order to buy a cotton contract for 100 bales, October delivery, and made his draft payable to L. G. Moore & Co. for $1,000, the cash margin. Fenner & Beane at New Orleans placed the order the same day. On May 8, 1920, Fenner & Beane, at the appellee's order, through L. G. Moore & Co., sold the cotton contract, netting $211.46 profit, making Fenner & Beane due L. G. Moore & Co., account J. B. Allard, the $211.46 profit and in addition thereto the $1,000 margin, aggregating $1,211.46. On May 8, 1920, Fenner & Beane, acting on a telegram from the Farm-

ers' National Bank, mailed to the Security National Bank of Dallas, for the account of the Farmers' National Bank, a draft for $12,917.19. This remittance was the aggregate sum due various customers at Cooper, including the $1,211.46 due appellee, but the face of the draft did not so recite, and the Security National Bank had no notice thereof. The Security National Bank placed the amount of the draft to the credit of the Farmers' National Bank on May 10, 1920. On that date the Farmers' National Bank had an account with the Security National Bank and was indebted to it in the sum of $20,000, evidenced by a note due March 14, 1920. The note was charged to the account of the Farmers' National Bank on May 14, 1920, and the deposit of the $12,917.19, including the sum due appellee, was applied to the debt and benefit of said bank. Then the Farmers' National Bank went into the hands of a receiver, and appellee demanded payment of the amount due him by reason of the remittance, and payment was refused. This suit followed.

A note was offered in evidence, purporting to be signed by appellee on April 7, 1920, for $300, due in 60 days, payable to the order of the Farmers' National Bank. The appellee denied having made such note, or that it was executed by his authority. The jury made the special finding of fact that appellee did not sign the note. But there was evidence tending to show that he received and used the proceeds of the note, and the jury made the special finding that, even if the appellee did not sign the note, he "received and utilized the proceeds of said note."

The Farmers' National Bank and receiver offered in evidence a check, purporting to be signed by appellee on July 29, 1920, drawn on the Farmers' National Bank, in the sum of $2,000, payable to "Fenner, Gatling & Beane or bearer." This check bore no marks of payment, and did not appear to have been charged against appellee's account in the bank. Appellee testified to the effect that the signature on the check was not his, and that he did not give such check; that he "had a settlement with the bank in 1919, and they still owed me money at that time"; that he "never did make any remittance of $2,000 from that bank to Fenner & Beane, the bank did not send anything like that for my account at that time." The appellants proved by C. E. Fenner of Fenner & Beane as follows:

"On or about July 29, 1919, the firm of Fenner & Beane did receive remittance of $2,000 through the Farmers' National Bank of Cooper, Tex., which was drawn for the credit of L. G. Moore & Co., account J. B. Allard. It is a fact that the firm of Fenner & Beane did receive the amount therein stated, of $2,000, from the Farmers' National Bank of Cooper, Tex., for the credit of 'L. G. Moore & Co., account J. B. Allard.' The firm of Fenner & Beane did

receive a telegram from the Farmers' National Bank at Cooper, Tex., on or about July 29, 1920, stating that said bank had credited our account with the sum of $2,000, and indicated that this was for the credit of the account of L. G. Moore & Co., account J. B. Allard. We credited the account of L. G. Moore & Co. account of J. B. Allard, for the said sum of $2,-000."

In November, 1919, the account of "L. G. Moore & Co., account J. B. Allard," was closed by Fenner & Beane. The account shows a credit on "July 29, by cash, $2,-000.00." On the face of the account, offered in evidence by the appellee, appears, as to August, 1919, the following:

| Item. | Debit. | Credit. |
| --- | --- | --- |
| August 1 By 100 December..... | | $ 146 52 |
| August 1 To 100 October......... | $ 218 38 | |
| August 2 To 100 December..... | 168 40 | |
| August 18 By 100 October....... | | 176 98 |
| August 22 By Cash.............. | | 1,000 00 |
| August 25 By 100 December..... | | 11 88 |
| August 25 To Cash.............. | 2,000 00 | |
| August 25 By 100 December..... | | 141 86 |
| August 27 By cash.............. | | 1,500 00 |
| August 28 By 100 December..... | | 61 84 |
| August 28 By 100 December..... | | 101 84 |

Appellee testified:

"I got the statement from Fenner & Beane that has been introduced in evidence after the bank closed—that was after the suit was filed. The first information I had of that $2,000 transaction was in October (1920). I did not have any knowledge whatever of that $2,000 item before this suit was filed. I never did furnish the bank, either before it closed its doors or afterwards, this $2,000 check purporting to be signed by me. I don't know anything at all about that check. I never did at any time borrow any money from the Farmers' National Bank. * * * During the time I was dealing in cotton contracts, in 1919 and 1920, I never had a $2,000 cotton transaction with Reed or Moore & Co. * * * Moore & Co. were not authorized to take care of this end for me, and Mr. Reed, of Moore & Co., did not make any remittance for me. * * * I never did have any cotton transaction at all through Mr. Stell, cashier of the Farmers' National Bank, and I never authorized him to make any remittances for me. I do not know whether any remittances were actually made for my account through the Farmers' National Bank. I know that Mr. Reed, of Moore & Co., never undertook to take care of my remittances for me, and he never offered to. * * * I do not know whether that is my account with Fenner & Beane. It is what they say is my account, and I can't be positive whether it is my account or not, but as far as I know it is. I accept it as a statement of my account. I did not make all the remittances shown in that account, some I did, and some I did not. It is a fact that an item of $2,000 appears credited to my account on July 29, 1919. I do not know one thing about that transaction. It appears that I was credited and then charged with the $2,000, and I suppose I got the benefit of that remittance that month in that settlement. I never received any benefit from it, and I never put up the money."

The jury were asked the following question:

"Did the Farmers' National Bank on July 29, 1919, pay to Fenner & Beane for the benefit of J. B. Allard the sum of $2,000?"

To which question the jury answered, "No."

L. L. James, of Cooper, and W. M. Taylor and Love & Rutledge, all of Dallas, for appellants.

Clark & Sweeton, of Greenville, and C. C. McKinney, of Cooper, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellee's suit was in the nature of assumpsit, and the recovery allowed was as for a debt owing and unpaid. The facts fully authorized the recovery. The Farmers' National Bank specially directed Fenner & Beane to make the remittance to the Security National Bank, and its request was complied with. The money was placed to the credit of the Farmers' National Bank, and, by its consent and acquiescence, was applied to its benefit. The Farmers' National Bank knew that the amount belonged to appellee, and that it had undertaken to perform the act of collecting the money for and in behalf of the appellee. In the facts an implied promise arises therefrom to pay over to the appellee the money remitted to it in its name under its direction. Accordingly the Farmers' National Bank would be in the relation of a debtor to appellee when the money was credited to its account by the Security National Bank, as much so as if the Farmers' National Bank had originally so entered the credit in its favor on its own books. L. G. Moore & Co. had no claim on the money, as the appellant bank knew. And if the Security National Bank did appropriate the money, it was done with consent of appellant bank, the latter having knowledge at the time, as shown without dispute; that appellee's money was included in the aggregate sum of the remittance by Fenner & Beane. The assignment of error is overruled.

[2] The further proposition stated in appellants' brief in effect present the point in view that a recovery should have been allowed for the $2,000 pleaded in their cross-action, since the uncontroverted evidence showed that the Farmers' National Bank advanced that sum of money for the appellee to Fenner & Beane, and that they credited him with that amount, and there is no evidence showing that said sum of money was ever repaid to the bank. It can be conceded, we think, that the evidence conclusively shows that the Farmers' National Bank, on July 29, 1919, credited to Fenner & Beane for the account of appellee $2,000 as a cash margin on cotton contracts, and telegraphed that fact to Fenner & Beane; and that Fenner & Beane "received the amount of $2,000 from the Farmers' National Bank of Cooper, Tex.,

for the credit of L. G. Moore & Co., account J. B. Allard," and that they "credited the account of L. G. Moore & Co., account J. B. Allard, for the said sum of $2,000." But the appellee testified, and there is no evidence tending to show differently, that he did not borrow any money from that bank, and did not direct nor authorize the bank to advance or remit the money; and he had no knowledge or information that the bank had made the remittance or that the money had been placed to his credit with Fenner & Beane until after this suit was filed; and he had never bought any cotton contract calling for that cash margin, and did not owe that sum of money on cotton contracts; and that he never got the $2,000, and never received any actual benefit from the advancement. In the light of the foregoing facts the advancement and payment of the $2,000 to Fenner & Beane "for the credit of L. G. Moore & Co., account J. B. Allard," was, as appears, a payment in cash margin of a cotton contract made either by direction of L. G. Moore & Co. without authority or consent from appellee, or purely voluntary on the bank's part without request or direction from appellee. And in the facts the appellee never knew that the advancement was made until after suit was filed, and never sanctioned nor ratified it.

[3, 4] The elements of a contract, either express in terms or implied in fact, with appellee, are not evident in the facts. The advancement was not made, as alleged, "at the special instance and request of the plaintiff." It is well settled that money advanced and paid by one person to a third party for the benefit of another does not necessarily impose a liability upon the latter; for one person cannot of his own will pay another's debt or advance money for his benefit without his consent and thereby convert himself into a creditor. In order to warrant a recovery in a suit of assumpsit for money paid out and expended, it devolved upon the bank either to allege an express contract, or specially allege facts and circumstances from which a contract legally sufficient to sustain the recovery will be implied. It is the settled rule that the plaintiff cannot recover on an implied contract in a suit counting on an express contract, and that he will not be allowed to show an express contract if he is suing on an implied contract. However, in some cases, under certain conditions appearing, the law imposes a personal liability against the person sought to be charged, where the advancement or payment of the money was beneficial. In such case it must be alleged and proven that the money advanced and paid was beneficial to the party sought to be charged, and that he, knowing that the money was advanced and paid for him, actually adopted, received, or took advantage of the consideration beneficial to him. In such circumstances the person benefited

would then become liable because of consent or ratification of the advancement and payment, having the legal effect of a promise to repay it. He must assent with knowledge of the appropriation. And the rule of imputed consent or ratification of the advancement and payment from receiving the benefits of the advancement and payment by another applies only when it appears that the party sought to be charged may accept or reject without serious inconvenience. Bigelow on Estoppel (6th Ed.) p. 747.

[5, 6] The rule is positive that if the party sought to be charged received benefits in ignorance of the fact of advancement, the party advancing the money not being under compulsion of law to pay it, ratification cannot be imputed, nor can estoppel by conduct be predicated. In the present record it appears that if appellee received any benefits from the advancement they were only indirect, and not direct benefits. He testified that he received no actual advantage or benefit from the advancement, and there is no evidence to the contrary. Fenner & Beane kept the account as "L. G. Moore & Co., account J. B. Allard," and the monthly statements and remittances were to "L. G. Moore & Co., account J. B. Allard." The remittances, it appears, were sent to appellant bank in the name of "L. G. Moore & Co., account J. B. Allard," and the appellee's account in that bank was not, it appears, charged or debited with the $2,000. The bank officials do not testify that appellee received the remittance or any part of it, and Fenner & Beane do not testify that they remitted it to appellee himself; and it does not appear that L. G. Moore & Co. turned the $2,000, or any part of it, over to appellee. As the record stands the inference is as reasonable that the appellee never received and appropriated the remittance of the $2,000 from Fenner & Beane, or any part of it, as the bank never received it. If any part of the $2,000 was applied by Fenner & Beane to liabilities of cotton dealings by "L. G. Moore & Co., account J. B. Allard," it does not appear in the evidence. Ratification or adoption on appellee's part through appropriation of the $2,000, or any part of it, does not appear in these facts. The mere fact that the $2,000 was used by Fenner & Beane to make profits for appellee would not entitle the bank to recover the $2,000 of appellee, especially in view of the undisputed evidence that appellee was in ignorance of the advancement until after suit was instituted. We must assume, in support of the trial court's judgment, that he found, as he was fully warranted in doing, that the appellee never received or appropriated the $2,000, or any part of it, actually or in payment of liabilities to Fenner & Beane, and did not ratify or consent to the advancement as such.

The judgment is affirmed.